705 A.2d 25

**Sherrie SHELTON, a minor, etc., et al.,**

**v.**

**Benjamin KIRSON, et al.**

**No. 238, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Jan. 23, 1998.

Bruce H. Powell, Baltimore, for appellants.

Argued before MOYLAN and THIEME, JJ., and WILLIAM H. ADKINS, Judge (Specially Assigned).

MOYLAN, Judge.

The appellant, Sherrie Shelton,[1] filed suit in the Circuit Court for Baltimore City on December 21, 1994 against the appellee, Ronald D'Angelo,[2] claiming that she had incurred lead paint poisoning while residing at 1914 East 31st Street, a property owned by the appellee, because of the negligence of the appellee. Judge David B. Mitchell on August 21, 1996

---

1.  Sherrie Shelton is a minor and the action was brought on her behalf by her mother and next friend, Felicia Washington.

2.  Suit was also brought against a codefendant, Benjamin Kirson, the owner of another property where the minor plaintiff resided or visited during the relevant period. That suit against Kirson was dismissed without prejudice.

granted summary judgment in favor of the appellee. On this appeal, the appellant raises the following four contentions:

1. that the discovery judge, Judge Thomas E. Noel, erroneously granted the appellee's motion precluding the appellant's expert medical witnesses from testifying;

2. that Judge Noel erroneously granted the appellee's motion for a protective order, precluding an inspection of the 1914 East 31st Street residence by the appellant's expert without holding a hearing prior to granting the motion;

3. that Judge Noel erroneously precluded the appellant from using an inspection report concerning the premises at 1914 East 31st Street; and

4. that Judge Mitchell erroneously granted summary judgment based on the lack of sufficient evidence of the presence of lead-based paint on the premises as a result of the erroneous rulings by Judge Noel with respect to discovery.

### Preclusion of Appellant's Medical Experts

The appellant's first contention concerns the order of Judge Noel precluding the testimony of certain medical experts named by the appellant. Following a pretrial conference in the case, Judge Ellen M. Heller on April 24, 1995, established a schedule within which all discovery in the case should be concluded. The schedule provided that all discovery, with the exception of that pertaining to experts and medical records, should be completed by April 24, 1996. With respect to medical experts and psychometric testing, Judge Heller ruled that all such experts should be named and all such testing results should be discovered no later than July 22, 1995. When the appellant attempted to name two medical experts on April 25, 1996, over nine months after the deadline, and with no psychometric testing yet having been done, the appellee moved to preclude testimony by the late-named experts because of inexcusable non-compliance with the time limits set

for discovery. Judge Noel granted that motion on July 8, 1996.

Without suggesting that there was any error by Judge Noel in having granted that preclusion order, we find it unnecessary to deal with the issue. The dispositive action in this case was the granting of summary judgment in favor of the appellee by Judge Mitchell. Earlier discovery rulings have present pertinence only to the extent to which they may have affected the granting of summary judgment. The discovery order precluding the medical experts demonstrably had no such effect. The testimony of the experts, at best, would have established that the minor plaintiff suffered from lead poisoning. The absence of any proof in that regard was not the basis for the granting of summary judgment by Judge Mitchell.

Although the summary judgment order of August 21, 1996 did not spell out the reasons for its issuance, those reasons may be readily inferred. In reviewing thoroughly the appellee's motion for summary judgment of May 24, 1996, the appellee's memorandum of law in support of that motion, the appellant's reply to that motion of June 17, and the transcript of the argument at the hearing on that motion of July 8, it is clear that the motion did not deal in any way with the absence of evidence of lead poisoning suffered by the appellant. The motion, rather, alleged the absence of evidence to show 1) any flaking, peeling, or chipping paint at 1914 East 31st Street; 2) any knowledge on the part of the appellee of any flaking, peeling, or chipping paint; 3) any presence of paint at 1914 East 31st Street that was lead-based; and 4) any knowledge on the part of the appellee that the paint at the said residence was lead-based. Under the circumstances, the appellant's first contention is moot.

### Discovery Sanctions Without a Hearing

The appellant's second contention concerns the frustration of her effort to inspect the premises at 1914 East 31st Street. Despite the fact that the time for discovery generally had

closed as of April 24, 1996 and that the appellant had made no effort to have that discovery schedule modified, the appellant sought as of June 11, 1996 to obtain discovery. The inappropriate vehicle was the appellant's response on that date to the appellee's motion for summary judgment. The response asserted the need for further discovery, including a test for lead at 1914 East 31st Street. The appellant also on that date filed a notice to take a second deposition of the appellee and requested the appellee "to produce tangible things for inspection, namely improvements known as 1914 East 31st Street."

Noting the untimeliness of the requested further discovery, the impropriety of deposing the appellee yet a second time (he had already given a deposition on an earlier occasion), and the impropriety of using a deposition as a device for obtaining a physical inspection of the property, the appellee moved for a protective order, precluding the redundant second deposition and precluding the inspection of 1914 East 31st Street. On July 8, Judge Noel granted that protective order. One of the appellant's complaints with respect to that order is that Judge Noel declined to conduct a hearing prior to issuing the order, despite the appellant's request for a hearing.

The controlling law with respect to the absolute entitlement to a hearing is Maryland Rule 2–311(f), which provides, in pertinent part:

> Except when a rule expressly provides for a hearing, the court shall determine in each case whether a hearing will be held, *but it may not render a decision that is dispositive of a claim or defense without a hearing* if one was requested as provided in this section.

(Emphasis supplied).

In *Fowler v. Printers II, Inc.*, 89 Md.App. 448, 598 A.2d 794 (1991), this Court held that Md. Rule 2–311(f) requires a trial judge to hold a hearing *only if its decision would be dispositive of a claim or defense.* This Court explained that the words "claim" and "defense" were to be narrowly construed, and "that these terms are [not] to include the arguments made in order to obtain or thwart collateral litigation matters, like

those contained in *motions for discovery sanctions, motions for protective orders,* or motions for sanctions under Rule 1–341." *Id.* at 485, 598 A.2d 794 (emphasis added). *See also Dixon v. Keeneland Assoc., Inc.,* 91 Md.App. 308, 315, 604 A.2d 502 (1992) ("Rule 2–311(f) only requires a hearing if a decision denying sanctions is dispositive of a claim or defense.")

The appellant cites to *Karl v. Blue Cross and Blue Shield of Md., Inc.,* 100 Md.App. 743, 642 A.2d 903 (1994) to support her position. The appellant misreads *Karl.* In *Karl,* the appellee had filed two motions for sanctions against the appellant for failure to respond timely to discovery requests. In the second motion for sanctions, the one at issue on appeal, the appellee sought the sanction of dismissal of the complaint. Despite the appellee's request for a hearing, the trial court granted appellee's motion to dismiss without holding a hearing on the motion. The appellant appealed. This Court, in vacating the trial court's judgment, focused on the fact that, although the appellee had filed a motion for sanctions, one of the sanctions requested was dismissal of the complaint. As we stated, "[a]lthough this motion was initiated under the Discovery Rule, it included a motion to dismiss, which is one, if granted, would be dispositive of the case." *Id.* at 747, 642 A.2d 903 (internal quotes omitted). Thus, under Md. Rule 2–311(f), the trial court erred in not holding a hearing prior to granting the motion to dismiss.

In the case *sub judice,* the appellee filed a motion for a protective order. Nowhere in his motion did the appellee seek dismissal of the complaint. Rather, the only remedy sought was an order precluding a second deposition of the appellee and the inspection of the real property at issue. For a decision to be deemed dispositive of a claim or defense within the contemplation of Rule 2–311(f), it must actually and formally dispose of the claim or defense. It is not enough to argue that it is the functional equivalent of a dispositive decision or that it lays the inevitable predicate for such a decision. The decision of Judge Noel with respect to the

protective order did not dispose of the appellant's claim. That claim went forward and was not ultimately disposed of until summary judgment was granted by Judge Mitchell.

Judge Noel did not err, as a matter of law, in denying the appellant a hearing because the appellant was not entitled, as a matter of law, to a hearing with respect to a decision that was not ultimately dispositive of his claim. The determination of whether to conduct a hearing, rather, was entrusted to the discretion of Judge Noel. In view of the flagrant failure of the appellant to comply with the schedule that had been fixed by Judge Heller for the completion of all discovery, we have no difficulty in holding that Judge Noel did not abuse his discretion in ruling against the appellant without any necessity for conducting a hearing.

The guidelines that assist a judge in exercising discretion with respect to a sanction for a discovery violation were well spelled out in the opinion by Judge Rodowsky for the Court of Appeals in *Taliaferro v. State*, 295 Md. 376, 390–91, 456 A.2d 29 (1983):

> Under the approach taken by most courts, whether the exclusion of ... testimony is an abuse of discretion turns on the facts of the particular case. Principal among the relevant factors which recur in the opinions are whether the disclosure violation was technical or substantial, the timing of the ultimate disclosure, the reason, if any, for the violation, the degree of prejudice to the parties respectively offering and opposing the evidence, whether any resulting prejudice might be cured by a postponement and, if so, the overall desirability of a continuance. Frequently these factors overlap. They do not lend themselves to a compartmental analysis.

*See also Eagle–Picher Industries, Inc. v. Balbos*, 84 Md.App. 10, 28–34, 578 A.2d 228 (1990), *rev'd in part on other grounds*, 326 Md. 179, 604 A.2d 445 (1992), making it clear that the *Taliaferro* guidelines apply in civil cases as surely as they do in criminal cases.

In the present case, the failure of the appellant either to seek an inspection of the premises or to name a lead-based paint expert within the required discovery schedule was substantial and not merely technical. With respect to this factor, *Taliaferro* is instructive:

In the case at hand the rule violation was a gross one. There was no attempt at compliance. This is not a case where notice was given a few days late, but well in advance of trial, or given in a technically defective form.

295 Md. at 391, 456 A.2d 29.

Appellant's counsel knew from the outset of the litigation that an inspection of the premises was necessary for the successful pursuit of the appellant's claim. There was no reasonable excuse for the appellant's protracted inaction in this case. The appellant failed to provide any reason for her failure to undertake an inspection of the property or to name her lead-based paint expert within the prescribed discovery deadlines. *Taliaferro* also referred to this as a factor to be considered: "Nor did Taliaferro present any excuse justifying the violation." *Id.* at 391, 456 A.2d 29.

### Preclusion of Premises Inspection Report And Lead Paint Expert

■ Notwithstanding the fact that the discovery schedule ordered by Judge Heller directed that all discovery, other than the naming of expert witnesses, would be completed no later than April 24, 1996, the appellant hired an inspector to examine the premises of 1914 East 31st Street on June 21, 1996. Notwithstanding the fact that the discovery schedule ordered by Judge Heller directed that all experts were to be named no later than July 22, 1995, the appellant sought to name one Corey Chester, the inspector who examined 1914 East 31st Street on June 21, 1996, as an expert witness on July 10, 1996, almost twelve months after the deadline.

By court order on August 9, 1996, Judge Noel precluded the use of Corey Chester as an expert witness and precluded the use of the June 21 inspection report of 1914 East 31st Street.

Under the rationale of *Taliaferro v. State, supra,* we see no abuse of discretion by Judge Noel in declining to tolerate the gross departure by the appellant from the discovery schedule. Our feeling in this regard was well expressed by Judge Thieme for this Court in *Naughton v. Bankier,* 114 Md.App. 641, 654, 691 A.2d 712 (1997):

> The record is ... devoid of any reason why an expert witness should be named belatedly over one year after the expiration of the disclosure period and be allowed to testify. For a trial court to permit a party to deviate so from a scheduling order without a showing of good cause is, on its face, prejudicial and fundamentally unfair to opposing parties, and would further contravene the very aims [of the rule] by decreasing the value of scheduling orders to the paper upon which they are printed.

### The Granting of Summary Judgment

The appellant's final contention is that Judge Mitchell erroneously granted summary judgment in favor of the appellee. The contention is largely redundant to the appellant's second and third contentions. If Judge Noel were held to have erroneously precluded the appellant from offering evidence (inspection reports and expert witnesses) to show that there was flaking lead paint on the premises and if Judge Mitchell's granting of summary judgment had been based on that lack of evidence, Judge Noel's hypothesized error in that regard would *ipso facto* be reason enough to reverse the judgment in this case. If, on the other hand, Judge Noel's preclusion of the evidence was proper, as we have held it was, then the appellant concedes that the granting of summary judgment would logically have followed from the resulting lack of evidence and she would have no basis for attacking the granting of summary judgment. Since we have held that Judge Noel was not in error, it follows that Judge Mitchell similarly was free from error.

The ultimate granting of summary judgment by Judge Mitchell, moreover, would be affirmed by us for yet an addi-

tional reason. Even had evidence been in the case showing that there was flaking lead-based paint on the premises during the critical period, there was still no evidence at all to show any notice of that fact communicated to the appellee or to show any knowledge of that fact on the part of the appellee. Absent evidence of such knowledge, the case against the appellee could not possibly have succeeded and summary judgment was, therefore, properly granted. *Richwind Joint Venture 4 v. Brunson,* 335 Md. 661, 674, 645 A.2d 1147 (1994); *Scroggins v. Dahne,* 335 Md. 688, 693, 645 A.2d 1160 (1994).

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**