976 A.2d 267

**UNNAMED ATTORNEY**

**v.**

**ATTORNEY GRIEVANCE COMMISSION.**

No. 57 Sept.Term, 2008.

Court of Appeals of Maryland.

July 21, 2009.

Reconsideration Denied Aug. 21, 2009.

510

**512**

Edward Smith, Jr., Baltimore, MD, for appellant.

Melvin Hirshman, Bar Counsel (Fletcher P. Thompson, Asst. Bar Counsel, Attorney Grievance Com'n of Maryland, Crownsville, MD), on brief, for Appellee.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, Judge.

Appellant, a practicing attorney and member of the Maryland Bar, is currently under investigation by appellee, the Attorney Grievance Commission ("Commission"), concerning the handling of Appellant's attorney trust account.[1] Pursuant to the investigation, Bar Counsel, acting on behalf of the Commission, filed a subpoena seeking documents from the attorney and the bank at which the account is maintained.

Appellant filed with the Circuit Court for Baltimore City a "Motion of Objection to Enforcement of Subpoena" and requested a hearing on the motion. The Commission filed a response in opposition to the motion, and likewise requested a hearing. The court, without holding a hearing, issued an order denying the motion.

Appellant appealed the order to the Court of Special Appeals.[2] We granted a writ of certiorari before a decision by

---

1. We have listed Appellant in the caption of this case as "Unnamed Attorney."

2. The order denying the motion is an appealable order because the order terminates the court proceeding, notwithstanding that the under-

that court to answer the following question: "Did the trial court abuse its discretion in denying the Motion of Objection to Enforcement of Subpoena?" For the reasons that follow, we hold that the court did not abuse its discretion, and we affirm the court's order denying the motion.[3]

## I.

On July 31, 2007, Provident Bank reported to the Commission, pursuant to the bank's obligations under Maryland Rule 16–610,[4] that an overdraft of $25.25 had occurred in an attorney trust account held by Appellant.[5] On August 7, 2007, Bar Counsel sent a letter of inquiry to Appellant regarding the overdraft, pursuant to Maryland Rule 16–612.[6]

---

lying investigation before the Commission remains ongoing. *Unnamed Attorney v. Attorney Grievance Comm'n,* 303 Md. 473, 480–81, 494 A.2d 940, 943–44 (1985).

3. Appellant filed a "Motion to Strike Portions of the Appellee's Brief," arguing that the Commission's brief contains a factual misstatement. We deny Appellant's motion because, as the Commission correctly states in its opposition to the motion to strike, the motion is premised on Appellant's misquoting the alleged factual misstatement in the Commission's brief.

4. Maryland Rule 16–610(b) provides that a financial institution that maintains an attorney trust account must, "as a condition of accepting the deposit of any funds into an attorney trust account," both "[n]otify the attorney or law firm promptly of any overdraft in the account or the dishonor for insufficient funds of any instrument drawn on the account" and "[r]eport the overdraft or dishonor to Bar Counsel as set forth in subsection b 1(C) of this Rule."

5. Appellant states that correspondence in the case alternatively refers to $25.15 and $25.25. The Commission does not dispute the exact amount. For the purposes of this opinion, we shall identify the reported overdraft as being in the amount of $25.25.

6. Maryland Rule 16–612 is entitled "Enforcement," and provides:
 Upon receipt of a report of overdraft on or dishonored instrument drawn on an attorney trust account, Bar Counsel shall contact the attorney or law firm maintaining the account and request an informal explanation for the overdraft or dishonored instrument. The attorney or law firm shall provide any records of the account necessary to support the explanation. If Bar Counsel has requested but has failed to receive a satisfactory explanation for any overdraft or dishonored

Appellant responded to the inquiry by letter dated August 28, 2007. Appellant gave an explanation for the overdraft, as required by Maryland Rule 16–612. In support of that explanation, Appellant provided account records that included bank statements and canceled checks for the period between May 1, 2007 and July 31, 2007, and ledger cards for those clients whose money Appellant said was in the trust account during the period of April 30, 2007 through July 31, 2007. Appellant explained the overdraft by referring Bar Counsel to a $ 1,000.00 withdrawal he had made for work performed for a client. Appellant maintained that he made the withdrawal based on the mistaken belief that the client's check covering these services already had been deposited into the account.

John DeBone is a paralegal on the staff of the Commission and has the primary responsibility of reviewing and analyzing trust account records. Upon analyzing the documents provided by Appellant in response to Bar Counsel's August 7, 2008 inquiry, Mr. Debone found a discrepancy between the May 31, 2007 trust account bank statement and the ledger cards. Whereas the trust account statement showed a balance of $149,380.47, the ledger cards showed that the balance in that account should have been $153,774.00, a difference of $4,393.53.[7] The discrepancy suggested to Mr. DeBone that Appellant was not holding in trust the amount of money that the internal ledger cards indicated he should have been holding. Mr. Debone concluded that the explanation Appellant

---

check, or if good cause exists to believe that an attorney or law firm has failed to perform any duty under these Rules, Bar Counsel may secure compliance with these Rules by appropriate means approved by the Commission, including application for an audit pursuant to Rule 16–722 (Audit of Attorney Accounts and Records).

7. Mr. DeBone stated the amount to be $149,380.47, in an affidavit he made in connection with this proceeding. In its brief before us, however, the Commission states the amount as $149,348.37. We can discern from the record no substantive explanation for the discrepancy; moreover, neither party has since mentioned it. We conclude that the discrepancy is immaterial to the issue we decide in the appeal, and, for purposes of this opinion, we shall identify the difference between the trust account statements and Appellant's client ledger cards as $4,393.53.

gave in his August 28, 2007 letter for the overdraft did not explain the more than $4,000.00 discrepancy.

Mr. DeBone's discovery prompted Bar Counsel to issue a subpoena on October 11, 2007, in connection with his investigation of the matter. The subpoena was directed to Appellant and Provident Bank and sought the "original documents," of all deposit slips, all deposited items, monthly statements, and all disbursed items and debit and credit memos for the escrow account "for the period of July 1, 2006 through the present."

On December 17, 2007, Appellant filed the "Motion of Objection to Enforcement of Subpoena," seeking to quash the subpoena. He raised a number of contentions in support of the motion: the subpoena violates his right to privacy; it bears no relationship to the legitimate duties imposed upon the Commission; the request is "over broad and calculated to go on a fishing expedition contrary to the authority" of Bar Counsel; the subpoena is "abusive and repressive"; and "use of this [subpoena] power by Bar Counsel under these facts is arbitrary and capricious and perhaps discriminatory." Appellant requested that "a full hearing be held on the record to litigate the issues raised herein."

The Commission filed a response in opposition to the motion. The Commission explained the discovery of the $4,393.53 discrepancy between Appellant's ledger cards and bank statement. The Commission argued that Bar Counsel "is obligated to conduct a thorough investigation of any error in movant's management of his trust account," and the subpoena was necessary to assist Bar Counsel in that investigation. The Commission requested a hearing so that it could "introduce testimony to support a good faith basis for the issuance [of the subpoena]."

By order docketed January 4, 2008, the court denied the motion, without a hearing. This appeal followed.

## II.

Appellant presents two grounds in support of his contention that the Circuit Court abused its discretion in denying the

motion to quash the subpoena. He argues, first, that the subpoena was "over broad" and "not relevant to [Bar Counsel's] inquiry," and, second, that the court should not have ruled on the motion without affording him a hearing or an explanation for the ruling. In support of the first ground of attack upon the court's order, Appellant argues that his August 28, 2007 letter to Bar Counsel satisfactorily explained the $25.25 overdraft, negating any need for further investigation. He further argues that the time period for which Bar Counsel has requested records, described in the October 11, 2007 subpoena as "from July 2006 to the present," is unrelated to the $25.25 overdraft that occurred in July 2007. In support of the second ground, Appellant relies on Maryland Rule 16–732(f), which is entitled "Confidentiality" and states in part: "A hearing before the court on any motion shall be on the record and shall be conducted out of the presence of all persons other than Bar Counsel, the attorney, and those persons whose presence the court deems necessary." Appellant argues that this provision "contemplates" a hearing, and the court abused its discretion in not granting a hearing in this case.[8]

The Commission counters that it properly approved Bar Counsel's issuance of the subpoena because it was reasonably related to the Commission's investigation of Appellant's trust account, and it was not overbroad in its scope. The Commission points out that, even assuming Appellant satisfactorily explained the overdraft that precipitated Bar Counsel's initial inquiry, he has not yet explained the $4,393.53 discrepancy between his ledgers and the bank statement that Mr. DeBone

---

8. Appellant has opted not to raise any of the other grounds he asserted in the motion to quash. Specifically, he does not attempt to argue that the subpoena violates his right to privacy, is "abusive and repressive," or that "use of this [subpoena] power by Bar Counsel under these facts is arbitrary and capricious and perhaps discriminatory." We note, without remotely intending to intimate that any of those bare contentions has merit, that Appellant's failure to brief any of those grounds amounts to the abandonment of all of them. *See* Md. Rule 8–504; *Chesek v. Jones*, 406 Md. 446, 455–56 n. 7, 959 A.2d 795, 801 n. 7 (2008).

discovered during his analysis of the records Appellant submitted in response to Bar Counsel's original inquiry. The Commission refutes Appellant's contention that the court should have held a hearing before ruling on the motion, by resorting to the language of Maryland Rule 2–311(f). The Commission argues that the Rule does not require a hearing on the sort of motion that was filed in this case because the court's "denial of Appellant's Motion was not a final disposition of any defense which Appellant could not raise in further proceedings in the disciplinary process."

## III.

Maryland Rule 16–732(a), entitled "Investigative Subpoena," in part empowers the Chair of the Commission to authorize Bar Counsel to issue a subpoena to compel the production of designated documents or other tangible things, if the Chair finds that "the subpoena is necessary to and in furtherance of an investigation being conducted by Bar Counsel pursuant to Rule 16–731[.]" [9] Subsection (b) of Rule 16–

---

9. Maryland Rule 16–732(a) provides in its entirety:

(a) **Approval and issuance.** (1) The Chair of the Commission may authorize Bar Counsel to issue a subpoena to compel the attendance of witnesses and the production of designated documents or other tangible things at a time and place specified in the subpoena if the Chair finds that (A) the subpoena is necessary to and in furtherance of an investigation being conducted by Bar Counsel pursuant to Rule 16–731 or (B) the subpoena has been requested by a disciplinary authority of another jurisdiction pursuant to the law of that jurisdiction for use in a disciplinary or remedial proceeding in that jurisdiction to determine alleged professional misconduct or incapacity of a lawyer subject to the jurisdiction of that disciplinary authority.

(2) Upon approval, Bar Counsel may issue the subpoena.

(b) **Contents.** A subpoena shall comply with the requirements of Rule 2–510(c), except that to the extent practicable, a subpoena shall not identify the attorney under investigation. A subpoena to compel attendance of a witness shall include or be accompanied by a notice that the witness (1) has the right to consult with an attorney with respect to the assertion of a privilege or any other matter pertaining to the subpoena and (2) may file a motion for judicial relief under Rule 2–510.

(c) **Service.** Except for service upon an attorney in accordance with Rule 16–724(b), a subpoena shall be served in accordance with

732 provides that the contents of the subpoena "shall comply with the requirements of" Rule 2–510(c) (governing subpoenas) "except that to the extent practicable, a subpoena shall not identify the attorney under investigation." In addition, the Rule provides that the subject of the subpoena may file a motion for judicial relief under Rule 2–510.[10]

Rule 2–510. Promptly after service of a subpoena on a person other than the attorney under investigation and in addition to giving any other notice required by law, Bar Counsel shall serve a copy of the subpoena on the attorney under investigation.

(d) **Objection.** The person served with the subpoena or the attorney under investigation may file a motion in the circuit court for the county in which the subpoena was served for any order permitted by Rule 2–510(e). The motion shall be filed promptly and, whenever practicable, at or before the time specified in the subpoena for compliance.

(e) **Enforcement.** On the motion of Bar Counsel, the court may enforce compliance with the subpoena.

(f) **Confidentiality.** Any paper filed in court with respect to a subpoena shall be sealed upon filing and shall be open to inspection only by order of the court. A hearing before the court on any motion shall be on the record and shall be conducted out of the presence of all persons other than Bar Counsel, the attorney, and those persons whose presence the court deems necessary.

(g) **Recording of statements.** Everything said by the witness at the time and place specified in the subpoena shall be contemporaneously recorded stenographically or electronically, and the witness shall be placed under oath.

10. Maryland Rule 2–510, entitled "Subpoenas," provides, in pertinent part:

(e) **Objection to subpoena for court proceedings.** On motion of a person served with a subpoena to attend a court proceeding (including a proceeding before a master, auditor, or examiner) filed promptly and, whenever practicable, at or before the time specified in the subpoena for compliance, the court may enter an order that justice requires to protect the person from annoyance, embarrassment, oppression, or undue burden or cost, including one or more of the following:

(1) that the subpoena be quashed or modified;

(2) that the subpoena be complied with only at some designated time or place other than that stated in the subpoena;

(3) that documents, electronically stored information, or tangible things designated in the subpoena be produced only upon the advancement by the party serving the subpoena of the reasonable costs of producing them; or

(4) that documents, electronically stored information, or tangible things designated in the subpoena be delivered to the court at or

The subpoena in this case was prompted by Bar Counsel's investigation into Appellant's possible mishandling of the attorney trust account he is required to maintain pursuant to Md.Code (2004 Repl. Vol., 2008 Supp.), §§ 10–301–10–307 of the Business Occupations & Professions Article, Maryland Rules Title 16 Chapter 600, and Maryland Rules of Professional Conduct 1.15. As we have noted, the subpoena was directed to both Provident Bank and Appellant, and sought, with respect to the trust account, the following "original documents": "All deposit slips"; "All deposited items (front and back)"; "Monthly statements"; "All disbursed items (front and back)"; and "All debit and credit memos (including wire transfer memos)," covering the period of "July 1, 2006 through the present."

 Appellant argues that the court abused its discretion in denying the motion to quash the subpoena because it is overbroad and irrelevant, given the narrow scope of the Commission's initial inquiry into the $25.25 overdraft. Appellant correctly recognizes that we ordinarily review a court's order denying a motion under an abuse of discretion standard. *See WBAL–TV Division, the Hearst Corp. v. State,* 300 Md. 233, 247, 477 A.2d 776, 783 (1984). We have held that a trial court abuses its discretion " 'where no reasonable person would take the view adopted by the trial court.' " *Metheny v. State,* 359 Md. 576, 604, 755 A.2d 1088, 1104 (2000) (quoting *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 312, 701 A.2d 110, 118 (1997)). Thus, we cannot reverse the order denying the motion to quash the subpoena unless we are persuaded that "no reasonable person" would have denied it.

In *Unnamed Attorney v. Attorney Grievance Comm'n,* 313 Md. 357, 360, 545 A.2d 685, 687 (1988), we examined the limits

---

before the proceeding or before the time when they are to be offered in evidence, subject to further order of court to permit inspection of them.

A motion filed under this section based on a claim that information is privileged or subject to protection as work product materials shall be supported by a description of the nature of each item that is sufficient to enable the demanding party to evaluate the claim.

of the Commission's power, during its investigation of the appellant's targeted direct mail solicitation practices, to issue a subpoena compelling the appellant to produce for inspection " 'any and all financial journals and ledgers' connected with appellant's law practice." In determining whether the facts of that case justified the Commission's "substantial exercise of subpoena power," we had cause to review the scope of that power. *Id.* at 364, 545 A.2d at 689.

We noted at the outset of our review that, "[i]n order to justify issuance of a subpoena, the [Commission's Inquiry] Panel [11] need not demonstrate that an ethical violation has in fact occurred." *Id.* We emphasized that, "because an Inquiry Panel's proceedings are investigatory in nature, they 'are similar to the proceedings conducted by a grand jury in criminal cases. Their purpose is to aid in determining whether to institute disciplinary action.' " *Id.* (quoting *Attorney Grievance Comm'n v. Stewart*, 285 Md. 251, 259, 401 A.2d 1026, 1030, *cert. denied*, 444 U.S. 845, 100 S.Ct. 89, 62 L.Ed.2d 58 (1979)). We noted, too, that disciplinary proceedings involving members of the legal profession are not to be equated with proceedings before administrative agencies, because " 'such proceedings are peculiar to the legal profession[,] the conduct of which is under the supervision of this Court.' " *Unnamed Attorney*, 313 Md. at 364, 545 A.2d at 689 (quoting *Unnamed Physician v. Comm'n*, 285 Md. 1, 9, 400 A.2d 396, 400 (1979)). Nonetheless, "in defining the appropriate boundaries of the [Commission's] subpoena power, we are guided by the requirement of reasonableness which circumscribes an administrative agency's investigatory powers." *Unnamed Attorney*, 313 Md. at 364, 545 A.2d at 689. We said in that regard that, "in order to meet the test of reasonableness, an investigation of an individual by an administrative agency may not be based upon mere conjecture or supposition that a

11. In 2001, the rules governing Commission investigations were rewritten. Since then, Commission Peer Review Panels have taken the place of what formerly were Commission Inquiry Panels and Review Boards. *See Attorney Grievance Comm'n v. Lee*, 387 Md. 89, 104, 874 A.2d 897, 905 (2005).

violation of law exists. Rather, it is incumbent upon an agency to demonstrate some factual basis to support its concern." *Id.* Further, "the subpoenaed testimony or documents must appear relevant to the investigation." *Id.* We identified certain specific factors that are "among those relevant in determining the validity of an administrative subpoena[,]" including: " '[w]hether the inquiry is authorized by statute, the information sought is relevant to the inquiry, and the demand is not too indefinite or overbroad.' " *Id.* at 365, 545 A.2d at 689 (quoting *Banach v. State Comm'n on Human Relations,* 277 Md. 502, 506, 356 A.2d 242, 246 (1976)).

■■ We added that " 'the subpoena power must at all times be confined to "the rudimentary principles of justice," [footnote omitted] and the courts will plainly refuse to enforce an administrative subpoena which is not within the bounds of reasonableness. [Citations omitted].' " *Unnamed Attorney,* 313 Md. at 365, 545 A.2d at 689 (quoting *Federal Communications Comm'n v. Cohn,* 154 F.Supp. 899, 908 (S.D.N.Y.1957)) (alterations in original). We noted that " 'a delicate balance' " exists " 'between the necessity of obtaining information required in the public interest in furtherance of a lawful inquiry, and the onerous burdens which the furnishing of this information may place on these respondents.' " *Id.* We concluded that the Commission's "investigatory power, while broad, is not without limits[,]" and "a subpoena issued in furtherance thereof, cannot be justified by the [Commission's] unsubstantiated suspicion of unethical behavior. Instead, there must exist some factual basis to support the investigation and, furthermore, any subpoenaed testimony or documents must appear relevant and material to the inquiry." *Unnamed Attorney,* 313 Md. at 365, 545 A.2d at 689.

■ Given, moreover, the similarities in nature between Commission investigations and grand jury investigations, *see id.* at 364, 545 A.2d at 689, we find useful the test the Supreme Court announced in *United States v. R. Enterprises, Inc.,* 498 U.S. 292, 297, 111 S.Ct. 722, 726, 112 L.Ed.2d 795, 805 (1991), for assessing the reasonableness of grand jury subpoenas.

The Supreme Court recognized in *R. Enterprises* that the grand jury "is an investigatory body charged with the responsibility of determining whether or not a crime has been committed" and it is empowered to "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Id.* (citation omitted). Further, because "[t]he function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred," the grand jury necessarily "paints with a broad brush." *Id.* Based on those principles, the Court devised a test for deciding a motion to quash a grand jury subpoena as unreasonable, under Federal Rule of Criminal Procedure 17(c),[12] on the specific ground of relevancy. When such a motion is made, it "must be denied unless the district court determines that there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." *Id.* at 301, 111 S.Ct. at 728, 112 L.Ed.2d at 807–08.

The *R. Enterprises* test for ascertaining the reasonableness of grand jury subpoenas, when relevancy is at issue, is consistent with the principles we discussed in *Unnamed Attorney,* 313 Md. at 364–65, 545 A.2d at 689. That test is also in keeping with the broad authority bestowed upon Bar Counsel, when investigating an attorney who is the subject of a complaint that is neither frivolous nor unfounded, to "demand that the attorney provide information and records that Bar Counsel deems appropriate and relevant to the investigation." Md. Rule 16–731(b)–(c). Therefore, we adopt the *R. Enterprises* test for ascertaining whether a subpoena issued by the Com-

---

**12.** Federal Rule of Criminal Procedure 17(c) provides, in pertinent part:

 **(c) Producing Documents and Objects.**

 **(2) Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

mission meets the standard of reasonableness, when relevance is the focus of the challenge to the subpoena.

Turning to the present case, the subpoena readily meets the adopted *R. Enterprises* standard of relevancy because there is every possibility that the documents sought by the subpoena "will produce information relevant to the general subject" of the Commission's investigation of Appellant's handling of his trust account. 498 U.S. at 301, 111 S.Ct. at 728, 112 L.Ed.2d at 807. Indeed, the very documents Appellant supplied in his response to the initial inquiry concerning the overdraft gave rise to the Commission's need for further investigation into the matter.

Neither does the subpoena suffer from overbreadth, as Appellant contends. Bar Counsel sought trust account records for roughly the two-year period before and after the initially-noted discrepancy between the trust account statements and Appellant's client ledger cards. Given the nature of Bar Counsel's investigation, Bar Counsel's seeking two years of bank records and related documentation was not remotely unreasonable.

Not unlike the responsibilities and authority of the grand jury described in *R. Enterprises,* at 297, 111 S.Ct. at 726, 112 L.Ed.2d at 805, the Commission has the responsibility of safeguarding the public and, through Bar Counsel, to conduct investigations into attorney conduct merely on suspicion that the law or Rules of Professional Conduct have been or are being violated, or even just because the Commission wants assurance that they have not been violated. *See id.*; *Attorney Grievance Comm'n v. Adams,* 404 Md. 1, 11, 944 A.2d 1115, 1120–21 (2008) (explaining the role of Bar Counsel in the attorney discipline process and declaring that at the "front end" of the process, Bar Counsel is "charged with investigating complaints filed against attorneys to determine whether petitions for disciplinary or remedial action are warranted," and if the petitions are warranted, Bar Counsel is charged with " 'prosecuting' those that are filed"). In the proper exercise of its responsibility and power to do so, the

Commission authorized Bar Counsel in the present case to issue the challenged subpoena. Because the subpoena easily satisfies the test of reasonableness, being both relevant and not overbroad, the court did not abuse its discretion in denying the motion to quash the subpoena.

Appellant fares no better with his argument that the court abused its discretion in not holding a hearing on the motion. He relies in that regard on Maryland Rule 16–732(f), the text of which reads:

**Confidentiality.** Any paper filed in court with respect to a subpoena shall be sealed upon filing and shall be open to inspection only by order of the court. A hearing before the court on any motion shall be on the record and shall be conducted out of the presence of all persons other than Bar Counsel, the attorney, and those persons whose presence the court deems necessary.

Appellant does not argue that Rule 16–732(f) mandates a hearing, and indeed it does not. He instead points out that the Rule contemplates the holding of a hearing on an objection to a subpoena, and, from that premise, he argues that the facts presented to the court in the motion and opposition to the motion necessitated an "evidentiary hearing" before the court ruled on the motion.

We agree with Appellant that the Rule contemplates that a hearing might be held on a motion to quash a subpoena in a given case. It does not follow, however, that the court abused its discretion in opting not to hold a hearing in this case. We have explained why the subpoena easily satisfies the test of reasonableness in light of the record before the court. And, contrary to Appellant's assertion, nothing in either Appellant's motion or the Commission's opposition suggested that an "evidentiary hearing" was necessary.

Appellant, moreover, cites no authority other than Maryland Rule 16–732(f) in support of his argument that he should have had a hearing on the motion to quash, and we know of none. Certainly Maryland Rule 2–311, the general rule on motions, does not assist Appellant.

We agree with the Commission that subsection (f) of Rule 2–311, which addresses hearings on motions other than motions filed under Maryland Rules 2–532, 2–533, and 2–534, does not entitle Appellant to a hearing on his motion. Rule 2–311(f) provides:

> **Hearing—Other Motions.** A party desiring a hearing on a motion, other than a motion filed pursuant to Rule 2–532, 2–533, or 2–534, shall request the hearing in the motion or response under the heading "Request for Hearing." Except when a rule expressly provides for a hearing, the court shall determine in each case whether a hearing will be held, but the court may not render a decision that is dispositive of a claim or defense without a hearing if one was requested as provided in this section.

Neither Rule 16–732, nor Rule 2–510(e), to which some sections of Rule 16–732 refer, "expressly provides" for a hearing on a motion to quash a subpoena issued by the Commission. Further, an order denying a motion to quash is not an order "dispositive of a claim or defense."

We have not previously defined precisely what is meant by the phrase "dispositive of a claim or defense." The most we have done is indicate what sort of rulings come within the meaning of that phrase. *See, e.g., Lerman v. Heeman,* 347 Md. 439, 447, 701 A.2d 426, 430 (1997) (holding that a motion for contribution would be "dispositive of a claim" under Rule 2–311(f) and therefore, if requested by one of the parties, a hearing on the motion would have been required); *Odenton Dev. Co. v. Lamy,* 320 Md. 33, 41, 575 A.2d 1235, 1239 (1990) (holding that the lower court was not required to hold a hearing on a motion to transfer); *Phillips v. Venker,* 316 Md. 212, 217, 557 A.2d 1338, 1340 (1989) (concluding that under Rule 2–311(f) a decision by a lower court on a motion for summary judgment was "dispositive of a claim" and therefore satisfied "one prong of the requirement for a hearing").

Although this Court has not precisely defined what is meant by a decision "dispositive of a claim or defense," the Court of Special Appeals has examined the issue. In *Fowler*

*v. Printers II, Inc.,* 89 Md.App. 448, 598 A.2d 794 (1991), *cert. denied,* 325 Md. 619, 602 A.2d 710 (1992), for example, the court considered the text of Rule 2–311(f) and traced the history of the drafting of that subsection. The court included in its review the minutes of the Standing Committee on Rules of Practice and Procedure for its meeting of October 12–13, 1979, to glean the Committee's intended meaning of the phrase "dispositive of a claim or defense." *Id.* at 484–87, 598 A.2d at 811–12.

The *Fowler* court concluded that what the Rules Committee intended to encompass by its use of the terms "claim" and "defense" were claims and defenses "intrinsic to the underlying cause of action," such as motions for summary judgment and motions to dismiss. *Id.* at 485, 598 A.2d at 812. And from its review of other rules this Court adopted at the same time as Rule 2–311(f), the Court of Special Appeals further concluded that "[n]ot one of the other pleadings and motions rules in Chapter 300, in any way suggests a broader meaning for 'claim' or 'defense.' " *Id.* at 486, 598 A.2d at 812. Moreover, those terms did not "include the arguments made in order to obtain or thwart collateral litigation matters, like those contained in motions for discovery sanctions, motions for protective orders, or motions for sanctions under Rule 1–341." *Id.*

As did the *Fowler* court, we too have reviewed the text of Rule 2–311(f) and the pertinent meeting minutes of the Rules Committee. We conclude, as did that court, that a decision dispositive of a claim or defense is one intrinsic to the underlying action. Further, the decision must "actually and formally dispose of the claim or defense," *Shelton v. Kirson,* 119 Md.App. 325, 330, 705 A.2d 25, 27 (1998). An order denying a motion to quash a subpoena issued by the Commission is not such a decision. *See Unnamed Attorney v. Attorney Grievance Comm'n,* 303 Md. 473, 480–81, 494 A.2d 940, 943–44 (1985) (recognizing that notwithstanding the finality of such orders for appeal purposes, the underlying investigative proceeding persists). Rather, the court's denial of the motion to quash the subpoena in this case involved merely, in the words

of the Fowler court, a "collateral litigation matter." 89 Md. App. at 486, 598 A.2d at 812.

We therefore hold that Appellant was not entitled to a hearing on the motion to quash under either Rule 2–311(f), Rule 16–732(f), or Rule 5–210(e). Moreover, for the reasons we have discussed, the court did not abuse its discretion in opting to decide the motion summarily, without a hearing.

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**